## Stark v. Long.

(Decided June 16, 1925.)

### Appeal from Warren Circuit Court.

1. Time—Contract "Up to" Certain Day Means "Until," and is Inclusive.—Broker's contract for sale of land "up to" specified day held to include that day; "up to" meaning "until," and "until" being inclusive, unless shown by context or otherwise that contrary is intended.

2. Brokers—Evidence Held Not to Show Bad Faith of Broker.—In action for commissions for sale of real estate under contract, where it was claimed that broker was trying to get vendor to agree to price less than amount which purchaser was to pay, evidence held not to show any bad faith or concealment of truth by broker.

GARDNER, OLIVER & DIXON for appellant.

JONES & PRITCHETT and JOHN L. STOUT for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

L. D. Long is a real estate broker in Bowling Green, Kentucky. J. Dan Stark in July, 1923, owned a business house occupied by J. L. Durbin & Co, he desired to sell. On July 26, 1923, Stark entered into the following written contract with Long:

"For and in consideration of $1.00 cash in hand paid, the receipt of which is hereby acknowledged, I, J. Dan Stark, hereby give and grant unto Luther D. Long the exclusive right and option to purchase or sell or otherwise dispose of the property hereinafter described up to August 1, 1923. . . .

"Also a business house located at 923 College street, now occupied by J. L. Durbin & Co., price of said property to be $30,000.00 upon the following terms, to-wit: $10,000.00 cash, balance due in one, two and three years after date of sale. . . .

"He further agrees to pay the said Luther D. Long a commission of 5% on the first $1,000.00 and 2½% on all amounts above said $1,000.00. He further agrees that after the exercise of said option and payment of the sum as may be hereafter agreed, to execute good marketable title with a general warranty deed to said property free from all encumbrances."

Long brought this suit to recover his commission on the contract, alleging in substance that he had procured a purchaser and that Stark refused to carry out the contract. The issues were made up and on the trial of the case judgment for $775.00 was entered in favor of Long. Stark appeals. The testimony for the plaintiff showed these facts:

Long at once went to see J. L. Durbin about buying the property and on July 31st closed the trade with Durbin. Durbin gave him a check for $2,500.00 as a binder on the property. Durbin then employed an attorney to look up the title. Long had a deed prepared and on that day took the deed and the check for $2,500.00 to Stark. Stark said that there had to be a release of a lien on the property and he would have to have that done before he would sign any papers and for Long to come back next day. Long on August 1st got a check from Durbin for $10,000.00, and again went to see Stark on the morning of August 1st as Stark had directed him. Stark then said to come back at one o'clock. He went back at one o'clock but found Stark gone from home. He learned that he was at the station about to go away on an approaching train. He went to the station with the check and the deed and Stark refused to accept the check or execute the deed. The testimony of Long is sustained by the testimony of Durbin and his attorney. The latter testifies that he was employed on July 31st by Durbin; that he examined the title and that Long on the 31st of July gave him the deed; that he did not finish his examination until that night and the next morning reported to Durbin the title good, except a lien on the property had to be released. Durbin testifies to the giving of the check for $10,000.00 on August 1st after the attorney advised him. On the other hand, Stark, without going into particulars, says that Long did not procure a purchaser or tender any check or ask the execution of the deed up to

August 1st, or notify him before that time that he had a purchaser.

The chief ground relied on for reversal is that the court did not properly instruct the jury. It is insisted that the option expired on July 31st and that the court should have so instructed the jury. This is the first and most material question in the case.

It is well settled in this court that where time is given until a given day to file an answer or bill of exceptions the paper may be filed on the day named. Meadows v. Campbell, 1 Bush 104; L. & N. R. R. Co. v. Turner, 81 Ky. 489; N. N. & M. V. R. R. Co. v. Thomas, 96 Ky. 613; Combs v. Frick Co., 162 Ky. 42. This rule is in accord with the great weight of authority. *Up to* means *until.* One expression is synonymous with the other. The rule as held by the weight of authority is thus stated by the Supreme Court of Iowa in Henderson v. Edwards, 16 A. L. R. 1990:

> "Ordinarily the word *until* is inclusive in its meaning and will be so construed unless it be shown by the context or otherwise that the contrary is intended."

To same effect see Montgomery Traction Co. v. Knabe, 158 Ala. 458; Houghwout v. Boisaubin, 18 N. J. Equity 315; Isaacs v. Royal Ins. Co., 5 Exch. 296; Brandenburg v. Budda Co., 199 Ill. 133; Jeremy Fuel Co. v. Denver, &c., R. R. Co., 59 Utah 266. The court should have instructed the jury that August 1st was included in the contract. The instruction as given was not prejudicial to the defendant.

W. C. Morris went with Long to the station on August 1st. He was also present on July 31st when Long notified Stark of the sale and Stark directed Long to have the deed drawn, and said that he had a mortgage on the property and would have to have that released before he could make a deed. On cross-examination of Morris as to what occurred at the station he stated in substance as follows:

> "It was the understanding that Stark was to take $27,500.00, that was the option. Long sold it for $30,000.00. Stark was to get $27,500.00 net. $7,500.00 was to be cash, balance by notes. I was helping in the deal and if I got Stark $27,500.00 I was to share in the profits."

Two witnesses introduced by the defendant stated in substance that Morris said he was buying it for himself for $27,500.00, and was to pay $7,500.00 cash and had there a check for $7,500.00. It is earnestly insisted that the agent had made a sale for $30,000.00, and was trying to impose on Stark a sale at $27,500.00, and Morris and Long were to divide the difference between them. But the facts do not show any bad faith or any concealment of the truth. The testimony of Long that he had told Stark that Durbin was the purchaser at $30,000.00 is uncontradicted. The only deed tendered was the deed to Durbin and the consideration was $30,000.00. The option referred to by Morris seems to be some option which Stark had extended to him outside of the regular contract with Long. This defense was not pleaded in the answer. No instruction was asked on it at the trial. The whole defense was rested on the idea that the option expired at midnight on July 31st, and on the whole record it is clear that this difference as to the date of the expiration of the contract is the sole cause of this controversy.

Judgment affirmed.